**Albert Charles MITCHELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42877.**

Court of Criminal Appeals of Texas.

June 10, 1970.

John K. Coil, Dallas (court-appointed on appeal only), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Camille Elliott, W. T. Westmoreland, Jr., and Harry J. Schulz, Jr., Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

The conviction is for murder; the punishment was assessed by the court at 15 years.

The evidence is undisputed that the appellant shot and killed Johnny Jackson with a pistol. After the State had rested its case, the appellant testified that he had known Johnny "Mutt" Jackson for a year or two, and that they were having some trouble because he (appellant) had "cut up" Jackson's stepson. About a week before the homicide, Jackson wanted the appellant to have a drink with him at a cafe, and the appellant refused and this made Jackson angry. The appellant testified that on the day of the homicide that Ben Taylor, "Big Man", Johhny Jackson and he went to his (appellant's) house to shoot dice and that they were there some forty-five minutes and Jackson picked up some of appellant's money on two or three occasions; that when Taylor told Jackson that he should not do that, Jackson became angry, went outside, turned around, kicked the door open and came toward appellant with a knife and stated, "I am going to stick my knife in you like you did my *son in law*. * * *" Appellant then reached under the bed, got the pistol and began to shoot Jackson but stopped shooting when Jackson turned and stopped coming toward him.

Irene Hogan, appellant's grandmother, testified that she was at the house where the homicide was committed and that appellant and only one other man (the deceased) entered and that the two men were there approximately five minutes before the shooting.

Dr. Earl Forrest Rose, a pathologist, testified that he examined the body of the deceased and found three recent gunshot wounds: one in the side of the head, one

in the collarbone, one through the chest. (He also found scar tissue and a fourth bullet in the abdominal area of the deceased which were there as a result of an earlier gunshot wound.)

Appellant, in his sole ground of error, complains that the trial court should have granted a mistrial during cross-examination when the prosecutor asked Annie May Robinson, appellant's mother: "Which one of Mutt's (the deceased's) brothers were you sleeping with?" and she answered, "I don't know."

Mrs. Robinson testified that some six days before the homicide she was operating the Gas Lounge when Johnny Jackson came in and offered the appellant a drink of whiskey which he refused. Later that afternoon her mother called and told her about the shooting, and she then went to her mother's house and saw appellant hand the officers the gun and "[h]e said Mutt had been picking on him all of the time on account of his old lady—his old lady's son." She testified that she did not know any of Mutt's people. Then she was asked which one of Mutt's brothers she was sleeping with, and answered she did not know. Appellant's counsel told the witness not to answer a question like that, and the witness stated, "I don't sleep with no man. I don't know nothing about Mutt's folks, I really don't." Appellant's counsel then lectured his witness not to answer a question after he had objected. Counsel did not object but made a motion for mistrial; the court overruled the motion and noted that the witness had already answered the question. Counsel did not ask for an instruction to the jury to disregard the question.

 The Court of Criminal Appeals rarely reverses a conviction solely because an improper question is asked. In White v. State, Tex.Cr.App., 444 S.W.2d 921, 922, it is written:

"An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. Wheeler v. State, Tex.Cr.App., 413 S.W.2d 705, 707; 5 Tex.Jur.2d, Sec. 437; McCormick and Ray, Texas Law of Evidence, Vol. 1, Sec. 29."

The question, in view of the record, does not call for a reversal.

The judgment is affirmed.